(No. 13076.—Judgment affirmed.)

THE WEST SIDE COAL AND MINING COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (ISAAC C. BEARE, Admr. Plaintiff in Error.)

*Opinion filed February 18, 1920.*

WORKMEN'S COMPENSATION—*injury to employee while disobeying orders does not arise out of employment.* Where an employee of a mining company is hired to sit at the top of a coal chute to pick rocks and slate from the coal before it passes down the chute into railroad cars, an injury to the employee while helping to move the cars so that they would fill evenly does not arise out of or in the course of his employment, where he had been ordered by the top foreman not to leave his seat at the coal chute or engage in the work of moving the cars.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. LOUIS BERNREUTER, Judge, presiding.

JAMES McKEAG, for plaintiff in error.

R. W. ROPIEQUET, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Industrial Commission reversed the finding of the arbitrator in this case that the accident to the deceased, Russell Schooler, did not arise out of and in the course of his employment and awarded the petitioner the minimum amount allowed under the statute. Defendant in error sued out a writ of *certiorari* from the circuit court of Randolph county, and upon a hearing that court found that the accident did not arise out of and in the course of the employment of the deceased and vacated the award of the Industrial Commission. Application for a writ of error to review the judgment of the circuit court was made to this court at its last term and the same was granted.

The only error relied upon by plaintiff in error for a reversal of the judgment of the circuit court is that that court erroneously found that the injury and death of the deceased were not the result of an accident arising out of and in the course of his employment.

The deceased was employed by plaintiff in error at its mine as a rock and slate-picker. His principal duties were to pick out the rock and slate from the coal as it passed through a chute leading from the coal mine to the railroad cars upon which it was being loaded. His location while performing that duty was on a seat at the top of the coal chute. The slack as it passed him dropped into the nearest car below, the egg coal into the second car, and the lump coal was carried by the chute into a car on the track farthest from him. The cars were standing upon an incline and were held in place by sprags or blocks, and when the sprags or blocks were removed the cars would move down the incline by their own weight. When one end of a coal car was filled the coal would pile up and fall off upon the ground if the car was not promptly moved so that the other end of the car could be filled. Other men were employed in the yards for the purpose of removing the sprags or blocks so as to permit the cars to make the proper movement to be filled and properly trimmed. They were known as car-trimmers and were paid for their work the union scale, and by defendant in error's agreement with the union no one was to do that work who did not receive that scale. In addition to his work as a slate and rock-picker the deceased drove the general manager back and forth from his home to the mine in his wagon and did the hitching and unhitching and was occasionally sent on errands to the town. He was not paid the union scale for his work. The secretary-treasurer and general manager of the plaintiff in error employed the deceased, and according to his testimony he was employed as a slate and rock-picker and for no other purpose except the odd errands as aforesaid. He told the de-

ceased what his duties were when he was employed, and told the top foreman to warn him not to engage in the work of moving the cars. The evidence is positive and undisputed that the top foreman did warn him a number of times before his death not to leave his seat at the coal chute or engage in the work of moving the cars at all. It was testified to by the top foreman and also by W. J. Smyth, and their testimony was corroborated by one of the car-trimmers, who testified that he heard the top foreman tell the deceased not to move or assist in moving the cars. On the day the deceased was killed it appears from the record that the car-trimmers got behind with their work or were not looking after their work of trimming and moving cars and that one of the cars was being overfilled at one end by the coal from the coal chute. The deceased left his seat and went down and removed some of the blocks or sprags under the car so that the car might move further down the incline and fill with coal at its other end. This car was an extra wide car, and by reason thereof, while the car was moving down the incline, the deceased's head was caught between an upright or post of the coal chute and a standard of the coal car. His head was thus crushed and he died a short time thereafter.

There is no dispute about the facts. The deceased was not engaged in any part of his duty, under the evidence, at the time of the accident but was engaged in an act that he had been told not to do. It cannot be said, therefore, that his death arose out of and in the course of his employment. *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11; *Central Garage* v. *Industrial Com.* 286 id. 291; *Rainford* v. *Chicago City Railway Co.* 289 id. 427.

It is contended by plaintiff in error that the top foreman saw the deceased on the ground just after he had taken the blocks or sprags from under the car and that he did not then warn or tell him not to engage in that work. The car was already then moving, and while the foreman

perhaps knew that deceased had removed the sprags, he was several feet away from him and it does not appear that a warning at that time would have saved the deceased.

As the deceased was not within the scope of his employment at the time of his injury the Industrial Commission had no jurisdiction to make an award for compensation. It is our duty to consider the evidence in the record which determines the question of jurisdiction. That evidence clearly shows that the deceased was outside of the scope of his employment and was not engaged in any duty for which he was employed or in any work incident thereto.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*