# WILLIAM MOORE v. J. A. McNULTY COMPANY AND ANOTHER.[1]

April 8, 1927.

No. 25,772.

**Relator's injury arose out of his employment.**

1. An employe, whose duty it was to remove grain doors from unloaded cars, was directed by his foreman to "beat it up the tracks" and get the grain doors out of cars at an elevator about 2¼ miles away before the cars were switched. The order was given about 25 minutes before the work was to be done. It was impossible to cover the distance on foot or by street car within that time. The employe attempted to board a freight train moving toward the elevator, but fell and was injured. From time to time he and other employes had boarded moving trains in going from one elevator to another to do their work and had never been forbidden to do so. The foreman had seen his men "catch trains." The employer knew that in doing their work the men got on and off cars set in motion on the elevator tracks and did not forbid the practice. *Held*, that relator was within the sphere of his employment and attempting to further the interests of his employer when he was injured, and that his injury arose out of his employment.

**Right to compensation not affected by violation of statute or ordinance.**

2. The mere fact that in attempting to board the train relator violated a statute and an ordinance does not defeat his right to recover compensation.

Statutes, 36 Cyc. p. 1174 n. 78.

Workmen's Compensation Acts—C. J. p. 40 n. 95; p. 74 n. 87; p. 86 n. 84 New; p. 115 n. 37.

---

See note in L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896; 28 R. C. L. 802; 3 R. C. L. Supp. 1596; 4 R. C. L. Supp. 1856; 5 R. C. L. Supp. 1568; 6 R. C. L. Supp. 1756.

[1]Reported in 213 N. W. 546.

Certiorari on the relation of the plaintiff to review an order of the industrial commission denying compensation in a proceeding under the workmen's compensation act. Remanded with directions . to award compensation.

*John A. Burns, Kerr, Nelson, Burns & Mohan, John J. Dudley,* and *George E. Hottinger,* for relator.

*C. E. Warner* and *G. A. Brugger,* for respondents.

LEES, C.

A writ of certiorari brings before us an order of the industrial commission denying relator's claim for compensation for an injury sustained on October 31, 1925, while employed by the J. A. McNulty Company.

Under contracts with railroad companies operating in St. Paul and Minneapolis, the employer removes grain doors from cars unloaded at elevators in the two cities and "coopers" cars to be loaded at the elevators. It employed a number of men to do the work, relator being one of them. His working hours were from 7:30 a. m. to 4 p. m. On the day of the accident, in response to a telephone call from his foreman, he went to one of the yard offices of the employer at about 12:35 p. m. and was directed by the foreman to go to the elevator of the Northern Oil Company in the midway transfer district to remove grain doors from cars which were to be pulled away from the elevator at one o'clock. The foreman told him to "beat it up the tracks" and get there as soon as possible and make the one o'clock switch. The distance he had to travel is approximately $2\frac{1}{4}$ miles. Accompanied by another employe, he started on his way. After proceeding a short distance, he saw a freight train approaching at a speed of about 12 miles an hour. It was going in the direction of the oil company's elevator. He ran across a number of railroad tracks and a ravine to get to the train, attempted to board it, fell, and was so injured that his right leg had to be amputated at the ankle. His employer had never directed him not to get on trains to go to elevators where he was sent to work. At times he and his fellow employes had boarded moving trains in going from place to place to do their work. The foreman had seen

employes "catch" trains and had never forbidden them to do so. He had seen employes throw grain doors out of cars while the cars were being switched. If they were not thrown out before the cars reached the railroad yards, it was necessary to send a truck out to pick them up. The employer's manager admitted that he had seen employes riding cars around the elevators when the cars were moved by gravity, and that employes had never been ordered not to get on moving trains. The employer owned a truck which was sometimes used to transport employes from one elevator to another. Sometimes the foreman would use his automobile for that purpose. On the day in question the truck was out of repair and the foreman did not have his automobile with him. He admitted that he knew that relator could not walk to the oil company's elevator between 12:35 and one o'clock; that the best way to go was to follow the railroad tracks and that he could not make the trip in less than 45 minutes if he took a street car. The employer reclaimed grain doors for the railroad company which owned them. In order to perform its contract with the companies, it was necessary to shift employes from one elevator to another as quickly as possible to avoid an excessive expenditure for labor.

An ordinance of the city of Minneapolis prohibits persons other than railroad employes from getting on or off moving cars. A statute of this state contains a similar prohibition. G. S. 1923, § 10507.

The referee found that the injury did not arise out of the relator's employment. There was an appeal to the industrial commission. The appeal was heard by two commissioners and the findings of the referee approved and adopted by an order signed by one commissioner. The other commissioner dissented. No question is raised as to the effect of a decision thus rendered. Without considering its effect we will treat it as the equivalent of an affirmance of the referee's findings and decision as in the case of a decision by a trial court affirmed by an appellate court the members of which are equally divided.

The principal question is whether the referee's finding that the injury did not arise out of the employment should have been sus-

tained. A subsidiary question is whether the fact that relator violated the ordinance and statute affects his right to compensation. Cases in this jurisdiction which touch both questions are State ex rel. Miller v. District Court, 138 Minn. 326, 164 N. W. 1012, L. R. A. 1918F, 88; Korhonen v. Missabe Ice Co. 153 Minn. 150, 189 N. W. 391; and Brokmeier v. Lamb, 170 Minn. 143, 212 N. W. 187.

In the first case, a messenger boy, sent to a theater for tickets, was returning with them to his employer's office. The distance was only five blocks. He climbed on a truck proceeding in the direction of the office and was injured while riding on it. A majority of the court were of the opinion that the injury did not arise out of the employment.

In the second case, the employer operated a gravel crushing plant at which cars were loaded. Cars would be brought in by the switching crew of the railway company and spotted a short distance from the plant. The track was on a slight grade toward the plant. The employe would let a car down, load it, shunt it on and then bring down another car. Cars under the control of a switching crew were coming in on the track. The employe went up the track beyond the spotting place, attempted to get on the end car and was run over and killed, 500 feet from the crusher. The cars were usually spotted so that the nearest one was only 50 feet from the crusher. The employe had been warned that, if he rode a car, he was likely to get hurt. The court distinguished the messenger boy case, saying that, although the deceased was doing something unusual, the evidence sustained a finding that he was still at his master's work in the course of his employment and that the accident arose out of the employment.

In the third case cited, the employe lost his life in an attempt to climb through a moving train. He had walked away from his place of work. The facts did not show that the risk he assumed was within the scope or sphere of his employment. Neither did they show that he was attempting to further his employer's interests. In this situation the finding of the commission that the accident did not arise out of the employment was sustained.

At the outset it is proper to remind ourselves that the workmen's compensation act is highly remedial and should not be construed so as to exclude an employe from the benefits thereof unless it clearly appears that he does not come within the protection of the act. State ex rel. Duluth B. & M. Co. v. District Court, 129 Minn. 176, 151 N. W. 912.

The relator was employed to work in and about freight cars. The evidence shows conclusively that in the course of the performance of their duties the employer expected its employes to remain in a car until the grain doors in it could be thrown out, even though there was not time to finish the work before the car was set in motion. Rapid shifts of employes from one elevator to another were necessary and usual. On this particular occasion the employe was directed to go to a place to which he could not possibly walk between 12:35 and one o'clock. By boarding a train going in his direction, he could easily reach his destination before one o'clock. The foreman could hardly have failed to know that the order he gave impliedly authorized relator to get aboard a train if he had an opportunity to do so, for in no other way could he reach the elevator at the appointed time.

The case is one where the act which caused the injury was within the sphere of the employment. It was relator's duty to comply with the foreman's order. He could not do so without finding some means of transportation which would carry him to the oil company's elevator faster than he could walk. The foreman admitted that he did not suppose that the relator would run all the way. The relator's act was fairly incidental to the employment. It was dangerous but not altogether outside any reasonable requirement of the employment. There was a causal connection between the condition under which the work had to be done and the act of the relator which resulted in his injury. These are among the tests to be applied to determine whether an accidental injury arose out of the employment. State ex rel. Duluth B. & M. Co. v. District Court, 129 Minn. 176, 151 N. W. 912; McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306; In re Maroney, 66 Ind. App. 333;

McCrary v. Wolff, 109 Neb. 796, 192 N. W. 237; Buvia v. Oscar Daniels Co. 203 Mich. 73, 168 N. W. 1009, 7 A. L. R. 1301.

Under the circumstances, there being no conflict in the evidence, we think that neither the referee nor the commission was justified in holding that the relator's injury did not arise out of his employment.

It is suggested that the statute and ordinance prevent a recovery of compensation. We think otherwise. In Plumb v. Cobden Flour Mills Co. Ann. Cas. 1914B, p. 495, 496 [1914 A. C. 67] it was aptly said:

"There are prohibitions which limit the sphere of employment, and prohibitions which only deal with conduct within the sphere of employment. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation. A transgression [of a prohibition] of the former class carries" the workman outside of the sphere of his employment.

In the instant case, the relator's violation of the statute and ordinance was a transgression of a prohibition which did not limit the sphere of the employment.

The Brokmeier case does not hold that the violation of the statute defeats a recovery. The court placed its decision on other grounds, saying:

"Whether the employe, as a matter of law, departed from the scope of his employment by assuming risks not fairly contemplated by the agreement of service when he attempted to climb through the moving train, we do not decide."

Apparently the weight of authority sustains the proposition that a workman does not necessarily put himself outside the sphere of his employment when he commits an offense for which he may be prosecuted. Union Colliery Co. v. Industrial Com. 298 Ill. 561, 132 N. E. 200, 23 A. L. R. 1150. The cases are collated in 23 A. L. R. pp. 1161-1163. At common law the fact that the injured person was doing an illegal act when he was injured did not in and of

itself constitute contributory negligence, Schaar v. Conforth, 128 Minn. 460, 151 N. W. 275. Since such negligence does not defeat a recovery of compensation, there is even more reason for holding that the violation of a statute is merely a circumstance to be considered in determining whether the injury arose out of or was within the sphere of the employment.

For the foregoing reasons we hold, as a matter of law, that the commission should not have adopted the findings of the referee but should have held that the accident arose out of the employment. The proceeding is therefore remanded with directions to award compensation.

An attorney's fee of $100 is allowed to the relator.